BROOKS BROWN

*vs.*

GUY GANNETT PUBLISHING CO.

Kennebec.   Opinion, August 3, 1951.

PER CURIAM.

ON EXCEPTIONS.   This was an action for libel of the plaintiff by the publication of an article in "Portland Sunday Telegram and Sunday Press Herald," a newspaper owned and published by the defendant company.

The declaration contained two counts.   In the first count it was alleged that the defendant:

"with intent to bring the plaintiff into hatred, contempt and ridicule, to deprive him of the benefits of public confidence and social intercourse, and to injure him in his business, did maliciously, wilfully, recklessly and falsely write, compose, print, publish, circulate, and sell in said newspaper the following false, scandalous and defamatory article of and concerning the plaintiff, entitled 'Back Door Politics,' said article being in the words following, to wit:".   (Here followed the alleged libelous article set out with innuendoes.)

Said count further alleged:

"And the plaintiff avers that by the writing, printing, publishing, circulating and selling the above false, malicious, defamatory and scandalous article as aforesaid, the defendant has greatly injured the plaintiff in his good name and reputation, has deprived him of public confidence, and exposed him

4

> to public hatred, contempt and ridicule, and plaintiff has suffered great pain and distress of body and mind, has been shunned by many of his former acquaintances, has been injured in his business and ability to sell insurance, and has otherwise been greatly injured and prejudiced;".

In a second count, which also contained the above allegations of intent and publication, after setting forth the alleged libelous article with innuendoes and alleging that the conduct charged therein amounted to a criminal offense as a violation of Sec. 36 of Chap. 4 of the Revised Statutes of Maine of 1944, the plaintiff continued:

> "and the plaintiff further says that by the writing, printing and circulation of said false, malicious, and defamatory article as aforesaid, the defendant has greatly injured and prejudiced the plaintiff in his own good name, character and reputation, and the plaintiff has been rendered liable to criminal prosecution for the above described crime, has suffered great pain and distress in body and mind, and has been held up to public scorn and ridicule, has been shunned by many of his former associates and acquaintances, has been embarrassed by whisperings and conversations in low tones wherever he went and has been ostracized from the society of many of his former associates and otherwise has been greatly injured and prejudiced;".

To this declaration the defendant filed a general demurrer. To the overruling of this demurrer the defendant alleged exceptions which were allowed, and it is upon these exceptions that the case is now before this court.

By its demurrer the defendant has admitted the truth of each and every one of the foregoing allegations.

In the very recent case of *Briola* v. *Bass Pub. Co. et al.,* 138 Me. 344 at 346, this court said:

> "It is too well settled to require extended citation of authority that there is a distinction in the requirements necessary to maintain an action of libel and in those essential in an action of slander. A charge which is published in writing is regarded

as carrying more weight than one which is made verbally. It is accordingly not necessary in a case of libel that the charge import a crime, nor is it essential that special damage be alleged. The question is, do the printed words, if believed, 'naturally tend to expose the plaintiff to public hatred, contempt or ridicule, or deprive him of the benefit of public confidence and social intercourse?' *Tillson* v. *Robbins,* 68 Me., 295, 301, 28 Am. Rep., 50."

It is not necessary in order for printed words to be libelous that they naturally tend to expose the plaintiff to public hatred *and* contempt *and* ridicule, *and* deprive him of the benefit of public confidence and social intercourse. *It is sufficient if they naturally tend to bring about any one of the foregoing consequences.* The governing principle of law is stated in the alternative or disjunctive, *not* in the conjunctive.

In the plaintiff's declaration in this case he has alleged not only the falsity of the article but also that it was published "with intent to bring the plaintiff into hatred, contempt and ridicule, to deprive him of the benefits of public confidence and social intercourse, and to injure him in his business." By its demurrer the defendant has admitted not only the falsity of the alleged libelous matter, but that it published the same with the specific intent set forth in the foregoing language. The declaration in the first count further alleges that by the publishing and circulating of the false printed matter the defendant has greatly injured the plaintiff in his good name and reputation, has deprived him of public confidence, and exposed him to public hatred, contempt and ridicule, and that the plaintiff has been shunned by many of his former acquaintances and has been injured in his business and ability to sell insurance. All of these allegations, which are allegations of fact, have been admitted by the demurrer. In the second count it is to be noted that in addition to many of the foregoing allegations the count alleges that by and because of the said libel the plaintiff "has been shunned by many of his former associ-

ates and acquaintances, has been embarrassed by whisperings and conversations in low tones wherever he went and has been ostracized from the society of many of his former associates." All of these allegations are allegations of fact and are admitted by the demurrer. The complete article of which the plaintiff complains, omitting innuendoes, is as follows:

"BACK DOOR POLITICS

A political deal cooked up last Spring is just coming to the fore — and it smells.

As best we can determine, a few five-and-ten-cent operators coaxed Brooks Brown, sr., out of the Augusta legislative race on the pretext of having a job lined up for his son, Brooks, jr., head of the Maine Council of Young Republican Clubs.

The elder Brown wanted to try for a House seat, but the pseudo-politicians had a ticket of their own and, realizing they couldn't beat a Brown at the polls, took another course.

They promised that if Brown would withdraw, they'd see that the son would become an assistant attorney general assigned to the Liquor Commission, the deal would have mean the bum's rush for Henry Heselon, whose only apparent error is doing a good job.

Soon after the September election, the five and dime operators attempted to carry out their promise. It seems that their only error was a failure to consult, at the time of the promise, with those in a position to fulfill the deal.

In other words, they hit a snag, but they're going to come out whole — thanks to Uncle Sam. Young Brown is being called into service which removes him as an eligible for the liquor commission assignment.

Our only point in bringing this deal into the open is to reveal that some of the boys play their politics seriously — they even talk for officials without authority.

We could call a few names but think it would add little to the overall picture."

If this article, if believed, naturally tends to expose the plaintiff to public contempt or even ridicule, or to deprive him of the benefit of public confidence and social intercourse, the demurrer must be overruled. Although it was argued by the defendant before this court that the foregoing article was complimentary to the plaintiff, such is not our opinion. To say the least, the article is capable of exposing the plaintiff to public ridicule, as the defendant by its demurrer has admitted it intended to do and actually succeeded in doing.

The plaintiff in his innuendo in the second count claims that the language used charges him with a violation of Sec. 36 of Chap. 4 of the Revised Statutes of this State relating to bribery. It is unnecessary for us to determine this question. If the words are otherwise libelous, as we hold they are, the innuendo may be regarded as surplusage. *Briola* v. *Bass Pub. Co. et al., supra.*

*Exceptions overruled.*

*Goodspeed & Goodspeed,* for plaintiff.

*Locke, Campbell, Reid & Hebert,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, WILLIAMSON, JJ. (NULTY, J., did not sit.)